**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                              No. 1:10-CR-3104 BB

PAUL BEEBE,

        Defendant.

**SENTENCING MEMORANDUM
AND OBJECTIONS TO PRESENTENCE REPORT**

Defendant, by and through undersigned counsel, hereby submits the following sentencing memorandum and objections to the Presentence Report prepared in this matter in support of his sentencing scheduled for January 25, 2012.

**I.    INTRODUCTION**

The parties in this matter have entered into a sentencing agreement pursuant to Rule 11(c)(1)(C) to a stipulated sentence of eight and a half (8½) years. The plea agreement also contains a specific factual basis which Defendant agrees sufficiently sets forth the necessary elements of the crime charged. Nonetheless, the presentence report ("PSR") contains many factual allegations the Defendant challenges. Accordingly, this sentencing memorandum, and objections to the PSR noted herein, are provided solely for the purpose of informing the Court of evidentiary objections to the PSR not related to the specific factual basis provided

in the plea in this matter. Hopefully the objections will provide the Court with a better understanding of what actually occurred in this case.

## II.    PROCEDURAL BACKGROUND

On May 7, 2010, a Criminal Complaint was filed in San Juan Magistrate Court alleging state charges of Kidnapping (First Degree), Conspiracy to Commit Kidnapping (First Degree), Aggravated Battery (Great Bodily Harm), Conspiracy to Commit Aggravated Battery (Deadly Weapon) and Tampering with Evidence. Also on May 7, 2010, an arrest warrant was issued and Mr. Beebe was arrested.

Defendant remained in state custody until November 10, 2010, when a federal Indictment was returned against the above-named Defendant as well as Defendants Jesse Sanford and William Hatch alleging various one count of Conspiracy and one count of Hate Crime pursuant to 18 U.S. C. §§ 371 & 249.

On May 4, 2011, a jury trial was held on the state charges in the San Juan County District Court and Defendant William Hatch was found Not Guilty of all charges except Conspiracy to Commit Aggravated Battery (Great Bodily Harm). On July 19, 2011, the above-named Defendant as well as defendants Jesse Sanford appeared in state district court in San Juan County and entered Guilty Pleas to various state charges. Thereafter, on August 18, 2011, Defendant appeared in federal court and entered his Guilty Plea in this matter. The parties have agreed that both state and federal charges are to run concurrently. This matter has now been set for sentencing on January 25, 2011.

### III.  DEFENDANT'S BACKGROUND AND CIRCUMSTANCES OF THE CASE

<u>A. Defendant's Background</u>

Mr. Beebe was born on August 3, 1983, in Phoenix, Arizona. His father is Paul Beebe Sr. and his mother is Carol Gilmore. Mr. Beebe does not have a relationship with his father because the elder Beebe was very abusive to both Paul Jr., and his mother, Carol, when Paul Jr. was a child. Mr. Beebe was removed from his parents' custody by the State of Arizona and placed into a group home at age twelve (12) due to continually running away. Mr. Beebe now has a good relationship with his mother, Carol Gilmore, who presently lives in Phoenix, Arizona.

At the age of sixteen (16), Mr. Beebe ran away from Arizona state custody and traveled to his brother's home in Texas. His older brother, Johnny Kornel, who was eighteen (18) years old at the time, took Mr. Beebe in. Mr. Beebe and his brother moved out of Mr. Kornel's home after a few weeks because they did not have any money. They moved to Oklahoma for a short period of time where they roamed around.

After leaving Oklahoma, Mr. Beebe and Mr. Kornel traveled to Arizona where they camped out for three (3) months in the Superstition Mountains. However, Mr. Beebe was eventually caught in Arizona and returned into state custody.

Mr. Beebe stated, he was placed into a boot-camp type of facility known as, "Vision Quest." According to Mr. Beebe, Vision Quest was a state supported program that had a Native American theme. Groups of teens were taught survival

skills in order to live off the land. Mr. Beebe recalled being taken into the mountains and left for days at a time with other teens. In the mountains, Mr. Beebe learned to set traps for rabbits, birds, an other small game which they ate.

Mr. Beebe was released from state custody when he reached eighteen (18) years of age. He moved to Oklahoma where he worked on oil drilling rigs as a roughneck and driller. While in Oklahoma, Mr. Beebe met his wife from whom he is presently separated. Her name is Kristian Salazar and they have a six (6) year old son named Hunter Keith William Beebe. His wife is Hispanic and, although they are separated, they remain very good friends. Mr. Beebe and his wife write each other and they still speak on the telephone. Ms. Salazar allows him to see their son whenever he is able. Mr. Beebe and Ms. Salazar have been separated since 2007.

Ms. Salazar has two (2) others sons from a previous relationship. During the seven (7) years Mr. Beebe and Ms. Salazar were together, he raised her boys, Michael Salazar, thirteen (13) years old, and Jacob Wohl, nine (9) years old, as if they were his own children. Mr. Beebe maintains a relationship with both boys through communication by letters.

Mr. Beebe's half-brother, Johnny Kornel, was half Anglo and half Native American. Mr. Beebe believes Johnny's father was Cherokee. Mr. Kornel, who Mr. Beebe viewed as a father figure, was very proud of his Anglo heritage. Mr. Kornel instilled "White Pride" leanings in Mr. Beebe. Although Mr. Beebe has a swastika

tattooed on his hand, he does not consider himself prejudiced. Mr. Beebe got the tattoo to honor his brother.

Mr. Kornel committed suicide a couple of years ago because he was distraught over his marriage. Mr. Beebe was very depressed over his brother's death and he himself separated from his wife and left Oklahoma, eventually landing in Farmington, New Mexico, where two (2) of his sisters live.

B. Circumstances of the Present Case

On April 29, 2010, Mr. Beebe was working at the McDonald's Restaurant in Farmington, when he first met the alleged victim, Vincent Kee. Mr. Beebe had been employed at the McDonald's for about three (3) months and was on state probation for a Larceny and was participating in Drug Court.

Mr. Kee, a Navajo, was homeless when he came into the McDonald's Restaurant. Mr. Kee asked Mr. Beebe where he could get a hotel for Twenty-Four Dollars ($24). Mr. Beebe informed Mr. Kee that there was no hotel that inexpensive. Mr. Kee then asked Mr. Beebe if he could spend the night at Mr. Beebe's home. Mr. Beebe told Mr. Kee he could and Mr. Kee paid him Twenty-Four Dollars ($24). Mr. Beebe offered Mr. Kee a soft drink and Mr. Kee waited until Mr. Beebe got off work. Mr. Beebe left work that evening at about 11:30 p.m. with Mr. Kee and went to Mr. Beebe's home. Mr. Kee went with Mr. Beebe freely and without force or coercion.

Mr. Kee took a shower when they got to the house and Mr. Beebe fell asleep in his bedroom. Mr. Kee was in the livingroom sitting on the couch when Mr. Beebe went to bed. Mr. Beebe had a posted set of "House Rules" in his home that

he made up (*see attached* Exhibit A).  The rules were intended to be in fun.  One of the rules he had posted in his living room stated, "If you fall asleep at any time befor[e] 2 a.m. you will be drawn on in permanent marker, all over you whatever we want."  Mr. Beebe made the rules up years ago and he and others have been drawn on when they have fallen asleep before 2:00 a.m.

At approximately 1:00 a.m., Mr. Hatch and Mr. Sanford arrived at Mr. Beebe's home.  Mr. Beebe let them into the house where Mr. Kee was asleep on the couch.  Mr. Hatch and Mr. Sanford, who are well aware of the rule and have been part of drawing on other visitors in the past who have broken the rule, began to draw on Mr. Kee while he slept.  Mr. Beebe used a red marker, Mr. Hatch used a black marker, and Mr. Sanford used a green or blue marker.

At some point that evening, Mr. Kee saw the tattoo of a swastika on Mr. Beebe's hand and told them it was an Indian symbol called, "Rolling Logs."  He wanted a similar tattoo to be placed on his arm.

Mr. Kee learned that Mr. Sanford is a tattoo artist.  Mr. Kee asked Mr. Sanford for a tattoo.  However, Mr. Sanford did not have his tattoo equipment so he told Mr. Kee he could not give him a tattoo.  It was Mr. Kee who suggested they do "what they do to cows."  Upon Mr. Kee's request, Mr. Sanford and Mr. Beebe decided they would give him a brand on his arm.  Mr. Beebe fashioned half of a swastika out of a coat hanger from his home.

Using the flame of Mr. Beebe's stove, he heated the hanger and then branded half of the swastika into Mr. Kee's arm.  Mr. Beebe then reheated the hanger and burned the second half of the swastika into Mr. Kee's arm.  Mr. Kee

did not complain about the pain and he appeared eagar to get the native symbol branded on his arm.  After the swastika was burned into Mr. Kee's arm, he told the men he liked it (*see attached* Exhibit B).

Mr. Beebe has never thought of the swastika as being something bad.  Mr. Beebe's brother, Johnny, was half Cherokee, and he wore a swastika proudly.  Mr. Beebe was aware the swastika is relative to Native American beliefs as well.  Mr. Beebe was familiar with a building in Farmington, located on Main Street, that has swastikas in its decor (*see attached* Exhibit C).  Those swastikas are not Nazi related.

The items depicting "white pride" and swastikas in his house used to belong to his deceased brother, Johnny.  Mr. Beebe kept these items in memory of his brother.  He also had the swastika tattooed on his hand as a way of honoring his brother.

Mr. Beebe told Mr. Kee he had to leave early in the morning because he had to be at the Community Service Office by 6:00 a.m.  Mr. Beebe explained to Mr. Kee he had to leave the house at the same time.  Mr. Beebe believed Mr. Kee understood this.

At 5:30 a.m., Mr. Beebe woke to find Mr. Kee in the bathroom drinking mouthwash.  Mr. Beebe told Mr. Kee he had to leave and Mr. Kee then departed Mr. Beebe's home.

Mr. Beebe did not hear anything more from Mr. Kee until he was arrested by the Farmington Police.  Mr. Beebe cooperated with the police investigation and gave a statement to the police without an attorney present because Mr. Beebe felt

he did nothing wrong. Mr. Beebe and the other defendants used the markers on Mr. Kee because they were just "fooling around." They believed that Mr. Kee had fully consented to the branding and, therefore, felt they had done nothing wrong.

Mr. Kee never gave any indication to Mr. Beebe or any of the defendants that he had any developmental disability. Mr. Kee told them that he was an alcoholic who liked to drink whiskey. Mr. Kee went on to tell them he drank mouthwash whenever he could not get whiskey. Mr. Kee appeared intoxicated to Mr. Beebe and Mr. Beebe suspected he might be a meth user as well. Mr. Beebe did not drink because he was scheduled to take a urinalysis test the following morning as part of his probation.

### IV.    OBJECTIONS TO FACTUAL ALLEGATIONS IN PRESENTENCE REPORT

Defendant makes the following objections to the factual statements set forth in the following paragraphs submitted, prepared by the PSR in this matter:

**Paragraph 12**: Had this matter proceeded to trial, the evidence would have shown that Mr. Kee entered the McDonald's restaurant where the Defendant was working and asked the Defendant for a place to stay. Additionally, the amount of money Mr. Kee paid Mr. Beebe was Twenty-Four Dollars ($24), not One Hundred Dollars ($100). Note that the internal investigation of the officers who made initial contact with Mr. Beebe, Officer Todacheeney, and Officer Hill, indicated that Mr. Kee was giving them a variety of different numbers regarding amounts he paid.

**Paragraph 13**: Had this matter proceeded to trial, the evidence would have shown that Mr. Kee was entirely confused over the identity of the people he claimed perpetrated the assault. For example, he identified a black truck at the

Defendant's apartment complex as being Mr. Beebe's vehicle. However, Mr. Beebe's vehicle is not a truck, but a grey Cadillac Seville.

**Paragraph 15:** According to Mr. Beebe, there were only two (2) Anglo individuals, Mr. Beebe and Mr. Sanford, working at the McDonald's that evening. Mr. Kee came into the restaurant alone with a box of chicken from Church's Chicken and was asking if there was any place in Farmington where he could get a hotel for Twenty-Four Dollars ($24).

That is when Mr. Beebe explained to him there was no way he was going to find a room at such a rate. Mr. Kee asked if he could stay with the Defendant at his place and he gave Mr. Beebe Twenty-Four Dollars ($24). Mr. Beebe gave Mr. Kee a free soft drink, on the house, and let him stay and eat his chicken in the McDonald's.

Mr. Beebe stated that Mr. Kee stayed at McDonald's for about an hour and a half until he got off work at approximately 11:35 p.m. Mr. Beebe never took Mr. Kee by his arm to leave the McDonald's. At all times, Mr. Kee went with Mr. Beebe willingly and voluntarily and without any coercion on Mr. Beebe's part.

Additionally, there was no female with Mr. Kee by the name of Rosa. None of the witnesses interviewed at the McDonald's identified any such individual.

Moreover, only Mr. Beebe and Mr. Kee were in Mr. Beebe's car. They did not smoke Marijuana. Mr. Beebe was on Drug Court supervision with the State District Court and was scheduled to have a urinalysis the next day. He also indicates that he smokes cigarettes and never uses a pipe.

Finally, nobody has a tattoo with the name of "Swats". Mr. Kee repeatedly made reference to an individual name "Swats". That individual was later identified as Frederick Swats and through investigation it was learned that he was not involved in this case whatsoever. Again, this is simply manufactured by Mr. Kee.

**Paragraph 16:** Mr. Beebe adamantly denies that they ever stopped at any place to buy anything on their way home. This would especially include alcohol. Mr. Beebe admits that Mr. Kee did take a shower but nobody other than Mr. Kee drank any alcohol, and it was much later in the evening.

Mr. Beebe asserts that Mr. Kee was asleep when Mr. Sanford and Mr. Hatch came over. Mr. Kee fell asleep after he took the shower.

It is important to note that no one ever directed Mr. Kee to a chair or held him down for a haircut. They never smoked Marijuana and Mr. Kee was actually found drinking mouthwash later in the morning when the Defendant asked Mr. Kee to leave the house. Mr. Kee was asleep when Mr. Sanford and Mr. Hatch came over to the house and that is when they begin drawing on him in violation of the "House Rules". Mr. Beebe playfully had a policy at his apartment that no one should fall asleep before 2:00 a.m. If you do, then you are subject to being drawn on with markers. All of Beebe's friends were aware of these "House Rules" and even Mr. Hatch had fallen asleep early and had been drawn on previously.

**Paragraph 17:** According to Mr. Beebe, this entire paragraph is incorrect. Had this matter proceeded to trial, the evidence would have shown that Mr. Kee woke up when Mr. Beebe, Mr. Hatch, and Mr. Sanford were actually drawing on

him. He asked what they were doing to him and they said, "we're drawing on you for falling asleep." They were all talking and Mr. Hatch asked Mr. Sanford to give him a haircut. During Mr. Hatch's haircut, Mr. Kee was playing a game on the computer. Mr. Hatch's hair cut was not done well and Mr. Beebe and Mr. Sanford were teasing Mr. Hatch. At this time, Mr. Kee asked if he could get a haircut. Mr. Hatch had Mr. Kee sit in a chair in the kitchen and he cut Mr. Kee's hair with a swastika design. Thereafter, they all stayed in the livingroom and talked for about thirty (30) minutes about tattoos because Mr. Sanford had just gotten tattoos.

**Paragraph 22:** Mr. Beebe would have testified that Mr. Hatch had actually been drawn on by one of their friends two (2) days earlier for falling asleep at Mr. Beebe's house (in violation of "House Rules"). When Mr. Hatch came over, he initially thought Mr. Kee, who was asleep on the couch was the individual who had drawn on him. That is when he started drawing on Mr. Kee. While drawing on Mr. Kee Mr. Hatch realized that he was not the individual who had drawn on him.

**Paragraph 23:** Mr. Beebe would have testified that Mr. Sanford is a tattoo artist. Mr. Kee wanted a tattoo like Beebe's swastika saying it was "rolling logs." Rolling logs is a Navajo design and is prominently displayed not only in the Federal courthouse on 4th Street and Gold Street in Albuquerque, but also on Buildings in Farmington. Mr. Sanford did not have his tattoo equipment. That is when Mr. Kee brought up branding, saying "what they do to cows." Mr. Kee had worked on a ranch before and had seen it done.

**Paragraph 24:** It is noteworthy that this entire incident did not take place in a short period of time.  In fact, they had all stayed up talking for almost two (2) hours before the branding incident actually occurred.  This is important because there was never any attempt to restrain Mr. Kee to keep him from leaving.

**Paragraph 25:** The instrument that was used to conduct the branding, the coat hanger, was never deliberately destroyed in an effort to hide evidence.  In fact, Mr. Beebe would testify that the coat hanger was actually thrown into the kitchen trash along with other trash and then thrown out the next morning with the rest of the trash into the dumpster.  This was the dumpster near where Mr. Beebe parked his car.

**Paragraphs 59 & 61:** Paragraph 59 alleges a separate offense from Paragraph 61.  In fact, those two (2) cases were combined for a single conviction.  Therefore, the Defendant should only receive two (2) criminal history points for that matter.  Removing those two (2) points from his criminal history points puts him in Criminal History Category 4, as opposed to Category 5.

**Paragraph 90:** Reflects that the Defendant's brother, Preston Kornel is in the custody of the Arizona Department of Corrections.  This is incorrect, the Defendant's brother is actually in the Department of Corrections in Texas.  Additionally, the Defendant's step-sister, Jenny Gilmore, lives in Vancouver, Washington, not Vancouver, Canada.

### V.   VINCENT KEE'S MENTAL CONDITION

Much has been made of Mr. Kee's mental condition.  It is obvious from medical evaluations that Mr. Kee suffers from Fetal Alcohol Syndrome and mental

issues related thereto. Nonetheless, he also functions on a relatively lucid day-to-day basis. It is noteworthy that many of the individuals who had contact with Mr. Kee on this particular evening indicated that they did not find anything particularly wrong with him. This includes two (2) of the officers who made the initial contact with Mr. Kee and transported him around the city in an effort to locate individuals who may have been responsible for his branding and drawing on him. Both of these officers, Officer Todacheeney and Officer Hill, were later subjected to an Internal Affairs Investigation regarding why they did not notice that he appeared to suffer from some mental health issues. Mr. Beebe, Mr. Hatch, and Mr. Sanford felt that Mr. Kee had consumed alcohol because Mr. Kee made reference to the fact that he was an alcoholic.

This is particularly important because much has been made that Mr. Kee was preyed upon by the three (3) defendants in this matter. Had this matter gone to trial, evidence would have presented that that was quite opposite of what occurred.

It is evident from Mr. Kee's condition that there is something wrong with him. However, he admitted to being an alcoholic to Mr. Beebe, Mr. Sanford, and Mr. Hatch. It was difficult to discern whether his odd behavior was related to his drinking or otherwise. Again, it is noteworthy he was functioning on a lucid level at all times when he was with Mr. Beebe, Mr. Sanford, and Mr. Hatch. He conversed with all three (3) defendants for over two (2) hours telling numerous stories about himslf. Consequently, when Mr. Kee "consented" to be branded, all three (3) defendant's felt what they were doing was acceptable behavior.

## VI.     ALLEGATIONS OF MR. BEEBE'S RACISM

Mr. Beebe has been attacked on various levels by allegations that he is a white supremacists, a racist, and that he was motivated to assault Mr. Kee based solely on the basis of Mr. Kee's race.  If this matter had gone to trial, Mr. Beebe would have presented evidence that he is not now, nor has he ever been associated with any white supremacist group.  In fact, his computer was taken and searched and his house entirely searched.  There was no evidence that at any time had he ever used his computer to do any searches or otherwise online research concerning white supremacy.  There were no white supremacist magazines, books, or other materials that give any notion that Mr. Beebe was a racist or white supremacist ideologue.

What would have been presented is that Mr. Beebe was greatly influenced by his older brother who later committed suicide.  Mr. Beebe looked up to his brother who had apparently developed a preoccupation with his white heritage which he interpreted as "pride in one's white race."  Mr. Beebe's "pride in his white race" was sometimes translated into a white supremacist position.  Many of the people who had contact with him, did not feel that he was ever engaged in any white supremacist rantings.  These would include the people closest to him, including his sisters, girlfriend, and friends that knew him well.

In fact, Mr. Beebe is entirely ignorant of the racist overtones of his "pride in his white race."  He was completely unaware of the historical significance of the Nazi Swastika, the Holocaust, or the 60 million people who died in World War II to defeat Nazism.  As a philosophical attitude toward life, Mr. Beebe is not a racist.

He simply attributes comments he made regarding white power or white pride as a way of indicating that he was proud of his heritage. His views must be looked at with an understanding that he is poorly educated and simply does not understand the antipathy felt by many individuals who translate his "pride in his white race" into a racial slur.

In short, although the crime here has racial overtones and Mr. Beebe has admitted in the factual basis of his Plea Agreement that at least part of what he did was racially motivated, he is not a racist ideologue as has been be portrayed. It is also important to note that William Hatch is Navajo, speaking fluent Navajo, and he gave Mr. Kee the haircut with the swastika.

## V.   CONCLUSION

Based on the above, Defendant respectfully requests the Court to accept the Plea Agreement and impose the one hundred two (102) month sentence.

Respectfully submitted,

Michael V. Davis
*Attorney & Counselor at Law, P.C.*
Post Office Box 3748
Corrales, New Mexico 87048
Telephone: (505) 242-5979

*FILED ELECTRONICALLY*

By: /s/ *Michael V. Davis*
Michael V. Davis
*Attorney for Defendant Paul Beebe*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of January, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

> Robert D. Ortega, *Assistant United States Attorney*
> E-Mail: Roberto.Ortega@usdoj.gov
>
> Richard A. Winterbottom, *Assistant Federal Public Defender*
> *Attorney for Defendant William Hatch*
> E-Mail: Dick_Winterbottom@fd.org
>
> Robert R. Cooper, *Attorney for Jesse Sanford*
> E-Mail: Bob@rrcooper.com

*/s/ Michael V. Davis*
Michael V. Davis